# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

NOEL WILLIAMS,

        **Plaintiff,**

        **Case No. 2:08-cv-0178-GLF-TPK**

    **v.**        **JUDGE GREGORY L. FROST**

        **Magistrate Judge Terrence P. Kemp**

**OHIO DEPARTMENT OF**
**COMMERCE,** *et al.*,

        **Defendants.**

## OPINION AND ORDER

This matter is before the Court for consideration of a joint motion for summary judgment (Doc. # 73) filed by Defendants Ohio Department of Commerce and its Director, Kimberly Zurz ("Defendants' Motion"). In addition to the motion, Plaintiff Noel Williams' memorandum in opposition ("Plaintiff's Response") (Doc. # 81), Defendants' reply memorandum (Doc. # 88), Plaintiff's motion to strike (Doc. # 89), as well as Defendants' memorandum opposing Plaintiff's motion to strike, are before the Court. For the reasons that follow, the Court **GRANTS** Defendants' motion for summary judgment, and finds **MOOT** Plaintiff's motion to strike.

## I. Background

On April 18, 1994, Plaintiff Noel Williams joined the Ohio Department of Commerce ("ODC") as a paralegal assistant in the Division of Securities. By the time of her discharge from employment with the agency, Plaintiff had risen to the position of Public Information Specialist in the ODC's Division of Securities. (Doc. # 63, Williams Dep., Ex. 15.) Additionally, Plaintiff

served, and continues to serve, as President of the Central Ohio Chapter of the National Association for the Advancement of Colored People ("NAACP").

On May 24, 2007, Rod Houpe, the ODC's Chief Information Technology ("IT") officer, obtained information that Rozland Flax, an IT employee, may have accessed secured files of the ODC's Director Kimberly Zurz, a defendant, and forwarded the restricted information to Plaintiff in a series of eight emails. Mr. Houpe's concerns were brought to the attention of Chase Canfield, the ODC's Human Resources Director, who then reported the incident to Defendant Zurz.

On May 25, 2007, both Ms. Flax and Plaintiff were put on paid administrative leave, pending the outcome of a formal investigation. An official letter drafted by Mr. Canfield, and hand delivered to Plaintiff, directed Plaintiff to remain at her home and in a "work-ready" status during her regularly scheduled work hours. Williams Dep. at 2. The investigation concluded that Plaintiff had not engaged in any misconduct regarding the files sent by Ms. Flax. As a result of the findings, the charge against Plaintiff pertaining to the potential receipt of restricted files, was dismissed. (Doc. # 67, Canfield Dep. at 29.)

In the course of the forensic analysis of Plaintiff's computer workstation, it was discovered that Plaintiff had engaged in a "high-degree of non work-related Internet access." Williams Dep. at 3. Non work-related Internet use was expressly prohibited under the ODC's Computer Use Policy. *Id.*

Further, while Plaintiff was on paid administrative leave, on June 4, 2007, she met with John Hasley, the Ohio Governor's Chief of Staff. *Id.* At the meeting, NAACP diversity

concerns regarding home foreclosures, as well as Plaintiff's personal employment issues at the ODC, were both discussed. (Doc. # 71, Hasley Dep. at 30.) The report filed by Mr. Canfield concluded that Plaintiff's attendance at the meeting during her regularly scheduled work hours and without prior authorization from a supervisor, was a violation of ODC's paid administrative leave policy requiring her to remain at home and on-call during work hours; the report concluded that the drive time to the meeting, plus the length of time of the meeting itself, were in excess of the allotted 30 minutes for lunch. Williams Dep. at 9.

Upon completion of the report and conducting a pre-disciplinary hearing before Andrew Shuman, ODC's Labor Relations Officer, at his recommendation Defendant Zurz officially signed off on the decision to terminate Plaintiff's employment with the agency. (Doc. # 66, Zurz Dep. at 5.) On August 30, 2007, Plaintiff was formerly discharged from her employment with the ODC, on four grounds: (1) insubordination during her paid administrative leave, (2) violation of computer use policy, (3) falsifying time sheets, and (4) working in excess of scheduled hours without authorization. Williams Dep., Ex. 15. Pursuant to the collective bargaining agreement between the ODC and the Ohio Civil Service Employees Association, Plaintiff filed a grievance, which was subsequently denied at arbitration. *Id.*, Exhs. 13 and 14.

On February 25, 2008, Plaintiff filed a complaint with this Court (Doc. # 1), and on December 1, 2008, Plaintiff amended that complaint (Doc. # 25). Plaintiff alleges that Defendants violated federal and state statutes prohibiting discrimination and retaliatory actions based on race and speech protected by the First Amendment to the United States Constitution. Plaintiff's amended complaint asserts ten counts for relief: (1) racial discrimination in violation of 42 U.S.C. § 1981 ("Section 1981"); (2) racial discrimination in violation of Ohio Revised

Code Chapter 4112 ("Chapter 4112"); (3) hostile work environment in violation of Chapter 4112; (4) retaliation in violation of Chapter 4112; (5) punitive damages; (6) wrongful discharge in violation of public policy; (7) deprivation of constitutional rights in violation of 42 U.S.C. § 1983 ("Section 1983"); (8) conspiracy in violation of 42 U.S.C. § 1985(3) ("Section 1985"); (9) retaliation in violation of the First Amendment to the United States Constitution; and (10) denial of equal protection under the Fourteenth and Ninth Amendments to the United States Constitution.

On November 13, 2009, Defendants Ohio Department of Commerce and Kimberly Zurz, filed a motion for summary judgment on all Plaintiff's claims. This motion is now ripe for disposition.

## II. Standard to be Applied

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is not appropriate if the dispute about a material fact is genuine, "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234-235 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

The moving party that seeks summary judgment "always bears the initial responsibility of informing" the court of the basis for its motion, and "identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). In determining whether there is a genuine issue as to any material fact, the evidence "must be viewed in the light most favorable" to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

## III. Discussion

### A. 42 U.S.C. § 1981 Race Discrimination Claim

Defendants request that the Court grant summary judgment on Plaintiff's discrimination claim brought under Section 1981. Specifically, Defendants argue that Plaintiff has not met her burden to show either direct or circumstantial evidence establishing that a similarly situated employee outside of the protected class was treated more favorably than she was treated. Defendants' argument is well taken.

Discrimination claims filed under Section 1981 are governed by the same legal framework as is used for claims filed under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. *Wade v. Knoxville Util. Bd.*, 259 F.3d 452, 464 (6th Cir. 2001). To establish a claim of discrimination, the plaintiff must show either direct evidence of discrimination, or in the alternative, circumstantial evidence supporting an inference of discrimination. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 572 (6th Cir. 2000). Where direct evidence of discrimination is

presented, the factfinder need not "draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003) (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)). Once the plaintiff produces evidence that the "employer terminated him because of his race or other protected status, the burden of persuasion shifts to the employer to prove that it would have terminated the plaintiff even had it not been motivated by discrimination." *Univ. of Cincinnati*, 215 F.3d at 572.

For direct evidence of discrimination, Plaintiff relies on an alleged statement made by Defendant Zurz to William Anthony, that the reason for Plaintiff's termination from employment is that she"has too much power." (Doc. # 19, Anthony Aff. ¶8.) Placed in context of Plaintiff's meeting with John Hasley, the content of which addressed NAACP matters regarding diversity representation as well as her personal concerns surrounding her paid administrative leave, Plaintiff argues that Defendants' alleged statement is direct evidence of discrimination. Hasley Dep. at 30. Plaintiff's assertion is that "she was terminated because she raised concerns about discrimination against African-Americans in state government," and the statement allegedly made by Defendant Zurz is direct evidence of discriminatory intent. *Id* at 12, 14.

Defendants argue that Plaintiff "has offered no evidence of direct discrimination." Defendants' Motion at 8. In reply to Plaintiff's contentions, Defendants counter that even if the alleged statement was in fact made, at most it shows Defendant Zurz's displeasure with Plaintiff for taking personal employment grievances directly to the governor's office, instead of proceeding through internal-agency grievance procedures or taking the matter up with Zurz directly. Further, Defendants point out that Kimberly Zurz is herself a member of the NAACP.

Finally, Defendants state that a factor leading to Plaintiff's employment termination was *not* the *content* of the meeting with Mr. Hasley. Rather, one of the grounds for her termination was insubordination as evidenced by the fact that she attended the meeting in violation of agency procedures during paid administrative leave. Specifically, Defendants assert that Plaintiff "had disregarded the terms of her paid administrative leave by leaving her assigned work area (her house) and conducting personal, non-Commerce-related business while on State time." *Id.* at 11.

The Court finds Defendants' argument persuasive. In assessing the relevancy of an alleged discriminatory remark, a two-step analysis utilized in a Sixth Circuit decision provides guidance. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 354-356 (6th Cir. 1998). First, the Court determines whether the alleged statement was made by a person in a position to effect an adverse employment decision against the plaintiff. *Ercegovich*, 154 F.3d at 354-355. Second, the Court examines the content of the statement to determine whether the substance of the remark is relevant to the plaintiff's claim of discrimination. *Id.*, at 355-356.

Defendant Zurz was certainly in a position of authority to make the ultimate decision to discharge Plaintiff from her employment, and as the record indicates, in fact made that final decision. However, there is nothing on the face of Zurz's alleged statement, even when viewed most favorably for Plaintiff within the context of the entire record, that establishes direct evidence of discriminatory intent. At most, the alleged statement reflects a less than ideal choice of words and tone stemming from frustration over Plaintiff's decision to disregard agency policy. Nonetheless, when placed in the totality of evidence present before the Court, the alleged statement – Plaintiff "has too much power" – is not remotely within the realm of what a

reasonable person would construe to be racially motivated and discriminatory. Plaintiff's theory of the case, therefore, requires drawing inferences based on indirect, circumstantial evidence.

To determine whether Plaintiff has established circumstantial evidence of discrimination, the Court employs the familiar *McDonnell Douglas-Burdine* test. *Univ. of Cincinnati*, 215 F.3d at 572 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Texas Department of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981)). The *McDonnell Douglas-Burdine* framework requires the plaintiff to establish a *prima facie* case of discrimination. *Id.* The plaintiff establishes *prima facie* case of discrimination by showing that 1) she is a member of a protected class; 2) she was qualified for her job and performed it satisfactorily; 3) despite her qualifications and performance, she suffered an adverse employment action; and 4) that she was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside her protected class. *Id*.

If the plaintiff establishes these four elements, a "mandatory presumption of discrimination is created and the burden shifts to the defendant to 'articulate some legitimate, nondiscriminatory reason for the employee's rejection.' " *Id*. (quoting *McDonnell Douglas Corp.*, 411 U.S. at 802). Should the defendant meet this burden, the burden shifts back to the plaintiff to prove that the "proffered reason was actually a pretext to hide unlawful discrimination." *Id*. To establish that the proffered reason was a mere pretext, the plaintiff must show "that 1) the stated reasons had no basis in fact; 2) the stated reasons were not the actual reasons; and 3) that the stated reasons were insufficient to explain the defendant's action." *Id*. (citing *Wheeler v. McKinley Enters.*, 937 F.2d 1158, 1162 (6th Cir. 1991)).

This same standard also governs Plaintiff's state law claims brought under Chapter 4112 of the Ohio Revised Code. *See Koval v. Dow Jones & Co.*, 86 Fed. Appx. 61, 65, 2004 WL 74651, at *4 (6th Cir. 2004) ("Ohio courts evaluate discrimination claims presented under § 4112 according to the same standards federal courts utilize to evaluate discrimination claims presented under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-2000e(17)"). The Supreme Court of Ohio has " 'determined that federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000e *et seq*., Title 42, U.S. Code, is generally applicable to cases involving alleged violations of [Ohio Rev.Code] Chapter 4112.' " *Hampel v. Food Ingredients Specialties, Inc.*, 89 Ohio St.3d 169, 729 N.E.2d 726, 731 (2000) (quoting *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm.*, 66 Ohio St.2d 192, 421 N.E.2d 128, 131 (1981)).

Turning to the question of whether Plaintiff has established a *prima facie* case of discrimination, it is conceded by Defendants that she has met her burden on the first three of four elements, specifically (1) she is a member of a protected class, (2) she was qualified for her position, and (3) that her termination constitutes an adverse action. However, Defendants argue that Plaintiff has not made, and is unable to make, a sufficient showing for the fourth prong, that she was "treated differently than similarly situated employees." Defendants' Motion at 8. The Court agrees with Defendants that Plaintiff cannot meet her burden as to the fourth prong.

While Plaintiff is required to show the employees she is comparing herself to "are similarly situated in all respects," this requirement is not so narrowly construed to demand that "every single aspect" of her employment status is identical to the other employees. *Ercegovich*, 154 F.3d at 352 (citing *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). Rather,

Plaintiff must only show that "all of the relevant aspects" of the comparable workplace situations were "nearly identical." *Id*. (citing *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994). Relevant factors that may be used in a "similarly situated" analysis include: "the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id*. (quoting *Mitchell*, 964 F.2d at 583). Though these are relevant factors, the Court must still "make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee." *Id*.

Plaintiff's brief in opposition to the motion for summary judgment does not identify the employees to whom she is comparing herself. From an affidavit on record, Defendants identify the five employees upon whom Plaintiff relies as evidence of similarly situated employees. (Doc. # 73, Shuman Aff. ¶¶ 7-11.) Defendants point out, however, that only one of the named comparable employees was found to have violated the computer policy. *Id*. ¶ 10. Defendants add that this particular employee was disciplined for her misuse, but because she had 18 years of service and no prior discipline, and because she did not deny the misuse, she was levied a two-day fine. *Id*. ¶ 11. Finally, Defendants argue that Plaintiff has not attempted to identify any other similarly situated employee evidence pertaining to the other basis for her termination regarding the failure to adhere to terms of her paid administrative leave.

Plaintiff argues that the *McDonnell Douglas-Burdine* test is no longer applicable, and apparently, for that reason has decided against attempting to establish the fourth element of that

test, that a similarly situated employee outside the protected class was treated more favorably than she was treated. Instead, Plaintiff relies solely on the mixed-motive analysis set forth in *Desert Palace v. Costa*, 539 U.S. 90 (2003). Defendants correctly point out, however, that the Sixth Circuit specifically rejected the argument that *Desert Palace* modifies *McDonnell Douglas* for employment discrimination lawsuits brought under 42 U.S.C. § 1981. *Aquino v. Honda of America, Inc.*, 158 Fed. Appx. 667, 676, 2005 WL 3078627 at *7 (6th Cir. 2005) ("leaving *McDonnell Douglas* intact as the principal framework for assessing circumstantial employment discrimination suits under § 1981"). Therefore, Plaintiff must show that there is a genuine issue of material fact regarding the fourth element of her *prima facie* case.

In that regard, the evidence indicates that Defendants terminated Plaintiff's employment status on four grounds, two of which make up the bulk of the disputed matter between the parties: violating the Ohio Department of Commerce's computer use policy, and insubordination for not adhering to the department's policy regarding employee conduct while on paid administrative leave. Williams Dep., Ex. 15. The evidence also indicates that Plaintiff was previously disciplined for violating the computer use policy. *Id.* at 23-25, 29 and Ex. 2. Plaintiff has failed to present evidence that Defendants treated any similarly situated employee not in the protected class better than she was treated upon discovering infractions of commensurate severity. Further, she has failed to point to disparate treatment for a repeat offender with a similar disciplinary history. Having failed to present a genuine issue of fact as to whether she can satisfy the fourth element of her race discrimination claim, Plaintiff cannot evade summary judgment.

**B. 42 U.S.C. § 1983 Race Discrimination Claim**

Because Plaintiff's Section 1981 claim fails as a matter of law, her derivative discrimination claim brought under Section 1983 also fails. In order to prove race discrimination under Section 1983, Plaintiff must prove the same elements that she would be required to prove while proceeding under Title VII. *Walker v. Ohio Dep. of Rehab. & Corr.*, 241 Fed. Appx. 261, 265-66 (6th Cir. 2007) (recognizing that "race discrimination claims ... under Title VII and ... under 42 U.S.C. § 1983 are governed by the same substantive standards"); *Smith v. City of Salem, Ohio*, 378 F.3d 566, 577 (6th Cir. 2004). Thus, to survive summary judgment on her Section 1983 race discrimination claim, Plaintiff must first present a *prima facie* case of race discrimination by introducing evidence sufficient to support a finding that she was a member of the protected class, that she suffered an adverse employment action, that she was qualified for the position lost, and that she was treated differently than similarly situated, non-protected employees. Plaintiff failed to establish the fourth element pursuant to Section 1981, and accordingly fails to do so pursuant to Section 1983.

## C. First Amendment Retaliation Claim

Defendants request that the Court grant summary judgment on Plaintiff's seventh and ninth claims for First Amendment retaliation. Plaintiff claims she was retaliated against for her speech concerning diversity matters made at meeting while she was on paid administrative leave. Plaintiff correctly identifies the appropriate legal framework and rightly states that it is her duty

to make out a *prima facie* case of First Amendment retaliation.  However, the Court finds that Plaintiff has not met her burden.

To establish a First Amendment claim for retaliation, the plaintiff must show that (1) she was engaged in constitutionally protected speech, (2) she "suffered an adverse action which would deter a person of ordinary firmness from continuing to engage in the protected conduct," and (3) the adverse action "was motivated at least in part by the protected conduct." *Smith v. Craven*, 61 Fed. Appx. 159, 161, 2003 WL 1465396 at *1 (6th Cir. 2003) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)); *see Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998).  A similar three-step analysis is applied in a public employee-public employer context:

> While public employees may not be required to sacrifice their First Amendment free speech rights in order to obtain or continue their employment, *Rankin v. McPherson*, 483 U.S. 378, 383, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987) (citing *Perry v. Sindermann*, 408 U.S. 593, 597, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972)), a state is afforded greater leeway to control speech that threatens to undermine the state's ability to perform its legitimate functions.  *See United States v. Nat'l Treasury Employees Union*, 513 U.S. 454, 475 n. 21, 115 S.Ct. 1003, 130 L.Ed.2d 964 (1995).  Therefore, in determining whether a public employer has violated the First Amendment by firing a public employee for engaging in speech, the Supreme Court has instructed courts to engage in a three-step inquiry.  First, a court must ascertain whether the relevant speech addressed a matter of public concern. *See Connick v. Myers*, 461 U.S. 138, 143, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).  If the answer is yes, then the court must balance the interests of the public employee, "as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees."  *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).  Finally, the court must determine whether the employee's speech was a substantial or motivating factor in the employer's decision to take the adverse employment action against the employee.  *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Perry*, 209 F.3d at 604.

*Rodgers v. Banks*, 344 F.3d 587, 596 (6th Cir. 2003).

In First Amendment retaliation cases in the public employment context, the trend in the Sixth Circuit has been to effectively merge the *Thaddeus-X* and *Rodgers* frameworks into an

integrated, multi-tiered analysis.  While there remains a lack of uniformity in the exact framework applied in these cases, it is apparent that what has emerged is particularly relevant for the first prong and the issue of whether the plaintiff engaged in constitutionally protected speech.  A recent Sixth Circuit opinion offers the best outline for this integrated framework.  *See Miller v. City of Canton*, 319 Fed. Appx. 411, 2009 WL 899805 at *4 (6th Cir. 2009).

As highlighted above, under *Thaddeus-X* the plaintiff must first prove that she was engaged in constitutionally protected speech.  Under *Rogers*, the first element requires a showing that the speech involved matters of public concern.  Further, the second element under *Rogers* employs the *Pickering* balancing interests test.  *See Pickering*, 391 U.S. at 568.  This Court will apply the following integrated framework provided in the Sixth Circuit opinion in *City of Canton*.  To establish that a public employee's speech is protected by the First Amendment, a plaintiff must make two threshold showings.  First, the plaintiff "must show that the speech involves a matter of public concern."  *City of Canton*, 2009 WL 899805 at *4; *see Scarbrough v. Morgan County Bd. of Educ.*, 470 F.3d 250, 254 (6th Cir. 2006).  Second, the plaintiff must show that the "speech was made outside the duties of employment."  *Miller*, 2009 WL 89905 at *4; *see Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169, 180 (6th Cir. 2009).  Next, after the two threshold showings are made, the Court "must balance the individual's interest against the government's interest under *Pickering*."  *Miller*, 2009 WL 89905 at *4; *Hughes*, 542 F.3d at 180.

Once the plaintiff establishes that she engaged in protected speech, she must then "establish the adverse action and causation elements of a First Amendment retaliation claim."  *Miller*, 2009 WL 89905 at *6.  The central inquiry connecting *Thaddeus-X* and *Rodgers* as it

applies to the instant case is whether Plaintiff can show a causal connection between the protected speech and the decision by the ODC to take adverse action against her. If Plaintiff is able to establish these elements, the burden then shifts to Defendants to show that in the absence of the constitutionally protected activity, "the same action" would have been taken by the ODC against Plaintiff. *See Thaddeus-X*, 175 F.3d at 399. Defendants are entitled to summary judgment as a matter of law if this burden shifting requirement is met. *Id.*

There is no dispute as to the second element that Plaintiff suffered an adverse action upon being terminated from employment. The parties do dispute, however, whether Plaintiff was engaging in constitutionally protected speech. Further, the central issue remains, that is whether there exists a causal connection between the constitutionally protected activity and Defendants' decision to discharge Plaintiff from employment.

### 1. Constitutionally Protected Speech

In determining whether the content of Plaintiff's communications at the meeting with Mr. Hasley is protected, it must first be found that the speech involved matters of public concern. *Scarbrough*, 470 F.3d at 255. Plaintiff argues that during the course of the meeting with Mr. Hasley, she raised issues "about lack of African-American representation on state organizations," and that this constitutes matters of public concern. Plaintiff's Response at 14, 17, 19. Plaintiff acknowledges that personal concerns surrounding her employment situation also came up during the meeting.

Defendants counter that it is "doubtful" that Plaintiff's speech can "be considered speech on a matter of public concern." Defendants' Motion at 11. Defendants argue that the "bulk" of

the meeting between Mr. Hasley and Plaintiff concerned her personal employment issues. *Id.*

Nonetheless, Defendants do not deny that at least a part of the discussion between Mr. Hasley

and Plaintiff revolved around NAACP matters of diversity participation on the foreclosure front.

Mr. Hasley affirmed in his affidavit that in fact at least two issues were discussed in the meeting:

NAACP matters concerning "foreclosure issues," and Plaintiff's "personal issues." Hasley Dep.

at 30.

The record before the Court presents evidence that the discussion between Mr. Hasley

and Plaintiff involved "mixed speech," *i.e.*, "those in which the speech for which the employee

claims First Amendment protection arises in the context of an employment grievance or other

personnel dispute, but where the employee claims that some part of the speech also touches upon

matters of public concern." *Farhat v. Jopke*, 370 F.3d 580, 590 (6th Cir. 2004) The issue is

whether the "mixed speech," regarding both personal employment issues as well as matters

relating to diversity participation in public efforts, constitutes matters of public concern and is

constitutionally protected activity. To resolve this inquiry, the Court must look at the "content,

form, and context of a given statement, as revealed by the whole record," in determining whether

an employee's speech addresses a matter of public concern. *Farhat*, 370 F.3d at 589 (quoting

*Connick v. Myers*, 461 U.S. 138, 147-148 (1983)). It is not necessary that the entire content of

the alleged speech "address matters of public concern, as long as some portion of the speech

does so." *Id.* (citing *Connick*, 461 U.S. at 149).

The latter guidance by the *Connick* court, resolves the issue as to whether Plaintiff's

speech at the Hasley meeting constitutes a matter of public concern. The record indicates that

Plaintiff's personal employment issues were discussed in the meeting, and these issues may have

been the bulk of the discussion and indeed, may have been the "main objective" for holding the meeting in the first place. Hasley Dep. at 35. Regardless, because the record also establishes that some portion of the meeting addressed matters of diversity representation in state functions, an issue of importance to the general public, Plaintiff's speech is deemed by the Court to be a matter of public concern. *Id.* at 30.

The second threshold inquiry is whether Plaintiff's speech was made pursuant to her "official responsibilities" or "outside the duties of employment." *Hughes*, 542 F.3d at 180 (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 424 (2006)). If Plaintiff's speech was made pursuant to her official employment duties, then Plaintiff's First Amendment claim must fail. *Id.* at 180. The U.S. Supreme Court explained, " 'the First Amendment does not prohibit managerial discipline based on an employee's expressions made pursuant to official responsibilities' and thus concluded that the plaintiff's First Amendment retaliation claim failed given that 'the parties in this case do not dispute that Ceballos wrote his disposition memo pursuant to his employment duties.' " *Id.* at 180 (quoting *Garcetti*, 547 U.S. at 424).

According to Mr. Hasley's testimony, the content of the meeting between he and the Plaintiff concerned "NAACP business," "foreclosure issues," and Plaintiff's "personal issues." Hasley Dep. at 30. In earlier testimony, Mr. Hasley states that the conversation initially centered on Plaintiff's "role with [the] NAACP." *Id.*, at 15. This is consistent with Plaintiff's contention that she scheduled a meeting with Mr. Hasley in her capacity as local president of the NAACP to address diversity representation issues. (Doc. # 79, Williams Aff. ¶¶ 7-8.) In light of the testimony, the Court finds that Plaintiff's speech of public concern was not made pursuant to her

"official responsibilities" at the Ohio Department of Commerce, and therefor survives the second threshold test.

As Plaintiff's speech passes both threshold tests, the Court must engage in the *Pickering* balancing test. The Court must determine the proper "balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the [government], as an employer, in promoting the efficiency of the public services it performs through its employees." *Garcetti*, 547 U.S. at 417, (quoting *Pickering*, 391 U.S. at 568). Where the plaintiff's speech "impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise," the government's interests may be implicated. *Rankin v. McPherson*, 483 U.S. 378, 388 (1987). However, if the plaintiff's speech "substantially involve[s] matters of public concern," the government must make a "particularly strong showing" that its interests trump the First Amendment rights of the employee. *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1053 (6th Cir. 2001) (alteration in original) (quoting *Leary v. Daeschner*, 228 F.3d 729, 737-38 (6th Cir. 2000)).

In the instant case, there is merely evidence that *some* of the communication between Plaintiff and Mr. Hasley at the meeting centered on matters of public concern. There is not sufficient evidence to show that the speech *substantially* involved matters of public concern. Accordingly, Defendants are not required to make the more stringent showing in the balancing interests test.

Nevertheless, Defendants must still make some showing that the content of Plaintiff's communications at the meeting with Mr. Hasley actually impaired the ODC from enacting "discipline," or actually impeded "harmony" among ODC employees, or actually had a "detrimental impact" on close working relationships at the ODC, or actually inhibited Plaintiff from adequately performing her "duties" for the ODC, or actually interfered with the "regular operation" of ODC. *See Rankin*, 483 U.S. at 388. It is not enough to say, as Defendants have simply argued, that "employers are permitted to place restrictions on the time, place, and manner of speech." Defendants' Motion at 11. While this may be true, how is it true in this case? It is certainly within the ODC's authority to outline and implement paid administrative leave policies, and further, it was within its discretion to determine that Plaintiff was in violation of these policies by her leaving her home for more than the 30-minute lunch period. But to the question of how the specific content of Plaintiff's speech at the meeting was either a further violation, or outweighed by the interests, of the ODC's paid administrative policy, is not clear to this Court.

Defendants' motion does not make an adequate argument on the question of whether the content of Plaintiff's speech is outweighed by ODC's interests. The insufficiency of Defendants' position is understandable given that the record before the Court indicates that the basis for Plaintiff's termination was not the content of her speech, but rather was her failure to adhere to paid administrative leave procedures. Defendants in effect concede this point when stating: "But in any event, Ms. Williams' words had nothing to do with her discipline; she was disciplined for her conduct." Defendants' Motion at 11. On balance, Plaintiff's communications regarding diversity issues on the foreclosure front is of sufficient public importance to outweigh

the ODC's interest in limiting the content of her speech. Thus, the Court concludes that Plaintiff's speech was protected by the First Amendment.

## 2. Causation

Plaintiff has made a sufficient showing for the first two prongs of a First Amendment retaliation claim: (1) Plaintiff was engaging in constitutionally protected speech, and (2) Plaintiff suffered an adverse employment action. The central issue to resolving a *Thaddeus-X* or *Rogers* analysis as it applies to the instant case is the causal connection element. Specifically, it must be determined whether a causal connection exists between the content of Plaintiff's protected speech that took place at the Hasley meeting, and the decision by the ODC to discharge her from employment with the agency.

A plaintiff satisfies the causation element of a First Amendment retaliation claim by showing that the adverse employment action "was motivated at least in part" by the protected speech; said another way, the causation element is established if the protected speech was "a substantial or motivating factor" in the adverse action. *Hughes v. Region VII Area Agency on Aging Scarbrough*, 542 F.3d 169, 181 (6th Cir. 2008); *Scarbrough v. Morgan County Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006); *Miller v. Admin. Office of Courts Nair*, 448 F.3d 887, 894 (6th Cir. 2006); *Nair v. Oakland County Comty. Mental Health Auth.*, 443 F.3d 469, 478 (6th Cir. 2006). Where temporal proximity between the time of the protected speech and the timing of the adverse action is used as evidence, a showing of temporal proximity alone is "insufficient to establish a causal connection for a retaliation claim." *Tuttle v. Metropolitan Gov't. of Nashville*, 474 F.3d 307, 321 (6th Cir. 2007). A showing of temporal proximity must

be coupled with "other evidence of retaliatory conduct" in order to sufficiently establish the causal connection element. *Id.* In *Moore v. KUKA Welding Sys.*, the Sixth Circuit set forth that "[t]he causal connection between the adverse employment action and the protected activity, here the filing of a complaint with the EEOC, may be established by demonstrating that the adverse action was taken shortly after plaintiff filed the complaint *and* by showing that he was treated differently from other employees." 171 F.3d 1073, 1080 (6th Cir. 1999) (emphasis added).

In addition to Plaintiff's computer misconduct, Defendants argue that Plaintiff was discharged for violating the "terms of her administrative leave." Defendants' Motion at 11. Specifically, Defendants found that Plaintiff was insubordinate of the paid administrative leave policy by being away from "her home for more than 30 minutes without telling ODC." Williams Dep., Exs. 8, 9a at 9, and 15. In the memorandum of opposition to Defendants' motion for summary judgment, Plaintiff presents a negligible effort to show a causal connection between the First Amendment speech and the discharge, making a mere passing attempt, and in a footnote at that, to establish the element. Nonetheless, Plaintiff has sufficiently established that temporal proximity existed between the time of the meeting with Mr. Hasley on June 4, and the timing of her discharge from employment on August 30. *See id.* However, Plaintiff is unable to show that she was treated differently than a similarly situated employee, and has failed to provide any other evidence of retaliatory conduct. The Court concludes that even when viewing the evidence in the light most favorable to Plaintiff, she presents insufficient evidence of a genuine issue of fact to satisfy the causation element, and as a consequence, her First Amendment retaliation claim is unable to survive summary judgment.

**D. Qualified Immunity**

In regards to Plaintiff's First Amendment retaliation claim, Defendant Zurz also raises the defense of qualified immunity. Defendants argue that Plaintiff cannot establish that her communications at the meeting on June 4, 2007, constitute protected speech, and therefore, Zurz is entitled to qualified immunity. While the Court does not find the basis of Defendants' argument to be well taken, the Court nonetheless finds that Plaintiff has not suffered a violation of her constitutional rights, and as a consequence, Zurz is entitled to qualified immunity.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Sixth Circuit explained:

> Until recently, federal courts were required to conduct the qualified-immunity analysis using the two-step sequential inquiry set forth in *Saucier v. Katz*, 533 U.S. 194 (2001). The first step required courts to determine "whether the facts that a plaintiff has alleged . . . or shown . . . make out a violation of a constitutional right." *Pearson*, 129 S. Ct. at 816 (citations omitted). And

>> if the plaintiff has satisfied this first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right.

> *Id.* (citation omitted).

> In *Pearson* [*v. Callahan*, 129 S. Ct. 808, 815 (2009)], however, the Supreme Court held that the sequential *Saucier* protocol was no longer mandatory. *Id.* at 818. The Court reasoned that

> [t]he procedure sometimes results in a substantial expenditure of
> scarce judicial resources on difficult questions that have no effect
> on the outcome of the case. There are cases in which it is plain
> that a constitutional right is not clearly established but far from
> obvious whether in fact there is such a right.

> *Id.*

*Waeschle v. Dragovic*, 576 F.3d 539, 543-44 (6th Cir. 2009) (alterations in original).

Defendants argue that Plaintiff is unable to establish that she had engaged in protected speech, and as a consequence, Defendant Zurz is entitled to qualified immunity. As previously discussed, the Court finds Plaintiff's mixed communications at the June 4 meeting, involving both personal employment concerns and NAACP matters, were enough to establish constitutionally protected speech. Further, Plaintiff was able to establish a temporal proximity between the June 4 meeting and her employment discharge on August 30. However, Plaintiff was unable to present any other retaliatory conduct required to show that her constitutional right to First Amendment speech was violated. Since *Pearson* no longer mandates a sequential two-step inquiry in a qualified immunity analysis, it is not necessary to examine whether Plaintiff's constitutional right was "clearly established" at the time of Defendants taking an adverse action against her. As a result, the Court finds that Defendant Zurz is entitled to qualified immunity.

## E. Plaintiff's Motion to Strike

Plaintiff requests that the Court strike portions of Defendants' reply memorandum (Doc. #88), contending that Defendants are raising new arguments, specifically to the First Amendment retaliation claim, that were not previously included in the motion for summary judgment. (Doc. #89, Plaintiff's Motion at 2). In the alternative, Plaintiff requests an

opportunity to submit a supplemental response to what it views as "new issues." Id. The Court, however, finds it unnecessary to address any of the reasons presented in Plaintiff's request because the Court did not rely on any of the material that Plaintiff cites to in Defendants' reply memorandum. Because the Court's analysis did not include any of the complained of materials objected to in Plaintiff's motion to strike, the Court accordingly finds moot Plaintiff's request to strike Defendants' reply memorandum.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants' Motion. (Doc. #73). Additionally, the Court finds Plaintiff's motion to be **MOOT**. (Doc. #89). The Clerk is **DIRECTED** to **ENTER JUDGMENT** in accordance with this Opinion and Order.

**IT IS SO ORDERED**.

/s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE